CHICAGO, ALTON & ST. LOUIS RAILROAD COMPANY

v.

ANTONIO GOMES.

*Personal Injuries—Action for Personal Injury—Moving Cars in Railroad Yard at Street Crossing—Negligence.*

In an action brought by plaintiff against defendant to recover damages for having his foot crushed by box cars in motion in defendant's yard, where it was crossed by a public street which plaintiff was upon, the cars in question being detached from an engine and accompanied by a single brakeman situated about the middle of the forward car, this court holds that the jury were justified by the evidence in finding defendant guilty of negligence and that the plaintiff was in the exercise of ordinary care at the time of the injury.

[Opinion filed May 20, 1892.]

APPEAL from the Circuit Court of Sangamon County; the Hon. J. J. PHILLIPS, Judge, presiding.

Messrs. GREENE & HUMPHREY, for appellant.

Messrs. BROWN, WHEELER & BROWN, for appellee.

MR. JUSTICE PLEASANTS. For more than twenty years appellee has resided in Springfield, quite near to appellant's yard, which is located on Third street and extends from Carpenter on the north to Madison on the south, a distance of three blocks. Its passenger depot is on the second block south of Madison. West of the main track on Third street were two others, one about seven feet from it, which was the passing track, and the other, about five feet further, which was the house track. There were no residences or places of business except appellant's roundhouse and freight house on either side of Third nor any street crossing it, between Carpenter and Madison; but a sidewalk was laid on the west side, which was considerably used by the public and extended from Madison north, past the freight house. On all of these tracks much business was done, with the amount and character of which and the mode of doing it, as with the locality and surroundings generally, appellee was quite familiar.

On December 8, 1887, he was a passenger upon appellant's train No. 2, from Williamsville, which arrived at Springfield about four o'clock in the afternoon. His residence was on Carpenter street, just west of the yard. After passing that street the train stopped for the crossing of the O. & M. railway on Madison and to have the track cleared; and there, being nearer home by several blocks than he would be at the passenger depot, he got off. To clear the track south, a switch engine had just passed from it onto the passing track a train of four box cars, which it left moving north at a rate of speed not exceeding three and a half miles per hour, with one brakeman in charge, who was on the top, about at the middle of the one furthest north, at the south end of which was the brake.

When appellee alighted he looked up and down the tracks and street, and saw these box cars, but observing that no engine was attached and being almost directly in front of them, he did not perceive, what a side view would have

shown, that they were in motion. He walked a short distance north, beside his train and between the tracks, and then turned northwest to cross diagonally the passing track and house track to the sidewalk, on the direct way to his home. Meanwhile the box cars had been gaining on him, and when he stepped upon their track were within ten or twelve feet of him. The conductor, a brakeman and a passenger on the train he had left, perceiving his danger and that he appeared to be unaware of it, simultaneously hallooed to him, and the conductor also gave a signal to the engineer of the switch engine which had been detached. The brakeman on the box car had not seen appellee and did not know of the particular occasion for them, but inferring from the signal or hallooing or both that there was danger, sprang to the brake and set it as promptly as he could. These measures, however, failed of effect. Appellee was struck down, the trucks of the forward box car and the forward truck of the next passed over his foot and crushed it so as to require its amputation; and for the injury thus sustained he recovered in this action a judgment on a verdict for $1,800, which appellant here seeks to reverse.

No point is made upon any ruling of the court preceding the verdict. Nor do we understand that there is any substantial disagreement about the facts as above stated. Appellant's contention is that they do not support the finding, but fairly show that it was not guilty of any negligence in the premises and that appellee's injury was due entirely to his own want of ordinary care. If this is well founded then the overruling of its motion to set aside the verdict and grant a new trial was error, as assigned.

Appellee insists that they prove the company was negligent in putting the box cars in motion where and as it did, without using proper means to see the danger it threatened, in time, by suitable warning to persons exposed, or by arresting such motion, to avoid it; and further, that he acted throughout with reasonable care for his own safety. It can not well be contended that his getting off the train where he did was in itself an act of carelessness. It had

come to a full stop, and remained standing for some time after he left it, as was anticipated. The place was a public street as well as a railroad yard. That fact. imposed upon both parties alike the exercise of a degree of care in the use of it as a street and as a railroad yard, respectively, proportionate to the danger it involved, but did not make such use by either an act of carelessness. It was shown that freight trains carrying passengers often stop and discharge them there. With his knowledge of the place and its dangers, it was not unreasonable that appellee should seek to avoid the delay and travel in getting home that he might by leaving the train there. Men of uncommon prudence and caution would have been apt to do it. Doubtless a more careful observation would have shown him that the box cars were in motion, but is not the judgment in such cases ordinarily formed from appearances as seen at a glance? When he stepped down from his train, he could not have been more, and probably was less, than five feet from the track on which they were coming. They and he were in the middle of a wide street open on both sides, and he almost directly in their line, with no fixed object show ing above them from which he could at once see they were moving. Their motion was, in fact, slow for a moving train, and therefore also comparatively noiseless. There was no engine attached to it, no bell on it announcing its approach. Under the circumstances he might, not unreasonably, take it to be standing. Having so taken it, he dismissed all question of danger from it, and without further attention proceeded in the natural and direct course on his way to his home. Other noises also may have prevented his hearing it or the warning attempted to be given. Mr. Ogan, the conductor of train No. 2, testifying for defendant, said: "If he had heard me, I think he could have saved himself. There was a good deal of noise, one of the engines was puffing some and the bells were ringing. I don't think he heard me." Can it, then, be fairly claimed that he did anything less or other than men generally would have done under the circumstances?

On the other hand, had the switch engine remained attached to these cars their speed could have been lessened, and they would have been under more complete control. The man on top could then have stood at the forward end of the forward car, in position to see the danger as soon as it appeared, and warned appellee, or by signaling the engineer stopped the train in time to prevent the injury. Several of the employes of the company testified, and it is not denied, that this way of transferring cars from one track to another—called " kicking "—is common in yards generally, and according to approved methods of railroad operation; nor is it difficult to understand that on such roads as this it would otherwise occasionally, and perhaps frequently, be impracticable to make up trains, handle the freight and do other necessary business in proper time. But this was a public street, as well as a yard, in the heart of the city, which the citizens and others constantly and rightfully used as such. Mr. Ogan says: " This was a movement sanctioned and recognized by good railroad management, to let cars run without an engine attached to them, with a man on top;" but he adds that "in a city, where people are passing and repassing, the conclusion might be different; the cars could be stopped easier with an engine." So also it was said that the position of the man on top—midway between the brake and the forward end—was the proper one, because "it equalized the dangers." At the brake he could not so well see what might be ahead, and at the front he could not so promptly apply the brake. But the best arrangement for equalizing dangers can not be accepted as an excuse for a failure to use easy means of avoiding them. In such a place, for such an occasion, an engine attached, with a bell ringing, and a man on top at the front; or the engine being detached, two men on top— one at the front and one at the brake—would almost certainly have prevented the injury here done. The danger that arose was such as should be anticipated on a public street, and the extra precaution suggested to meet it would impose no serious burden upon the company—none not re-

quired by ordinary care for its own interests and the safety of others. L. S. & M. S. Ry. Co. v. Johnsen, 135 Ill. 641.

These views of the conduct of the respective parties, whether our own or not, seem to us to be such as a jury of fairly intelligent men, without prejudice or bias, might conscientiously take from the evidence. The case has been submitted to three juries. Two failed to agree. Whether the evidence upon the last trial differed from that produced on the others, we have no means of knowing, but we think it was sufficient to support the finding, though it may have made room for a difference of opinion upon the questions of fact involved. See the case cited *supra.*

The judgment will therefore be affirmed.

*Judgment affirmed.*